BENNY CLARK, Plaintiff-Appellant and Appellee, *v.* STANDARD LIFE & ACCIDENT INSURANCE COMPANY, Defendant-Appellee.—(GERALD GRIMES, Comm'r of Insurance of the State of Oklahoma, Defendant-Appellee and Appellant.)

First District (3rd Division)  Nos. 76-1526, 77-347, 77-664 cons.

Opinion filed February 14, 1979.—Rehearing denied March 13, 1979.

Robert F. Lisco, of Chicago (Sidney Z. Karasik and Michael Kreloff, of counsel), for appellant-appellee Benny Clark.

Joseph and Friedman, of Chicago (Jack Joseph, of counsel), for appellee-appellant Gerald Grimes.

Epton & Druth, Ltd., of Chicago (Bernard E. Epton, Lawrence A. Berman, and Edward J. McCambridge, of counsel), for appellee Standard Life & Accident Insurance Company.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The circuit court of Cook County dismissed the complaint of the

plaintiff, Benny Clark, ruling that a settlement agreement barred his cause of action. Earlier in the case, the court denied the motion of the Commissioner of Insurance for the State of Oklahoma (the Commissioner), representing the defendant, Standard Life and Accident Company of Oklahoma (the Company), while it was in liquidation proceedings in Oklahoma, for a stay of the Illinois case during the pendency of the liquidation. An appeal by Clark from the dismissal of his complaint and an appeal by the Commissioner from the denial of the stay were consolidated; both are now before this court for our consideration.

In May 1971, Clark bought a disability insurance policy from the Company in conjunction with the purchase of a home and a mortgage for that home. Under the benefits clause of that policy the Company agreed to pay Clark $262.50 per month "[w]hen injury or sickness shall totally and continuously disable [Clark] * * * for more than 30 days * * * so long as he is continuously disabled * * * until the date of expiration of the mortgage agreement * * * or until * * * [Clark] attains his 65th birthday, whichever shall occur first." The clause in the policy labeled "Termination of [Clark's] Protection" states that, among other things, "[the] protection afforded by the policy to * * * [Clark] shall terminate upon * * * the date the principle indebtedness is paid * * *."

In October 1974, Clark filed a complaint in the circuit court alleging that, although he was totally disabled by multiple sclerosis since July 1973, the Company, in bad faith, refused to honor its obligations to pay him the monthly indemnity. He asked for the entire amount of the policy, $110,250, in damages and he requested $27,562 in costs and attorney's fees. (This is designated as count I.)

In January 1975, insolvency proceedings for the Company were initiated in Oklahoma. On February 3, 1975, the Company was placed in receivership; the Commissioner was named its conservator and given control over it. An injunction, issued by an Oklahoma court as part of its order appointing the Commissioner, contemplated the stay of all then pending actions against the Company.

On February 24, 1975, the Company and Clark agreed to settle the Illinois case and the following consent judgment was entered:

"[I]t appearing to the court that all matters in controversy having been fully compromised, settled and adjourned, and it further appearing that the defendant has agreed to make certain payments to the plaintiff and his attorney on a regular monthly basis during the period of disability; IT IS THEREFORE ADJUDGED as follows:

1. The above entitled cause is hereby dismissed with prejudice and without costs.

2. In the event the defendant fails to make payments as here and

above provided, the plaintiff may petition the court to reinstate the * * * cause upon proper notice to the defendant."

This is the only rendering of the settlement. Pursuant to it, the Company made a lump sum payment to Clark and began to make monthly payments to him.

On August 18, 1975, Clark quit-claimed his right, title and interest in the house to the mortgagee, the principle indebtedness was paid and Clark was released from the mortgage. Sometime in October 1975, the Company notified Clark that it would no longer continue payments to him.

On November 11, 1975, Clark filed a petition entitled "Petition under Section 72 to Vacate Order of Dismissal." In the petition he alleged that the Company violated the settlement agreement contained in the consent judgment of February 1975, by failing to continue payments to him. He asserted that pursuant to the consent judgment, a breach of the settlement permits him to petition the court to vacate the dismissal and reinstate his original complaint. An order granting that petition and reinstating the original complaint, consisting of count I, was entered that same day. Although notice was given, no one appeared for the Company.

On December 5, 1975, the Commissioner made a motion in the circuit court to stay the action against the Company, requesting the court to respect the injunction order of the Oklahoma court until the proceedings in Oklahoma were concluded. The motion was denied.

In January 1976, during the Oklahoma liquidation proceedings, a rehabilitation plan for the Company was implemented. All the assets of the Company were transferred to an entity which would be known as Standard Life and Accident Insurance Company (New Standard). New Standard, infused with capital, assumed all policy liability of the Company, that is, the contract liability. It did not take on any "extra contractual liability." An entity called Oklahoma City Life and Accident Insurance Company (Old Standard) remained subject to tort claims and claims of creditors of the Company. A sum was set aside for Old Standard to use in settling those claims; Old Standard was to be liquidated.

In September 1976, Clark filed an amended complaint in the circuit court requesting $250,000 in exemplary or punitive damages. He alleged that the Company's refusal to honor its obligations constituted bad faith and complete disregard of his rights. That count was amended again on November 19, 1976: Clark alleged that as a result of the wrongful conduct of the Company and its failure to honor its obligations under the insurance policy he suffered damages and fell in arrears on his payments of the mortgage in such an amount that he was unable to make any payments due including interest, attorney's fees and costs, forcing him to quit-claim his interest in the home. (These claims for damages are

designated count II.) In a subsequent bill of particulars, Clark alleged that, based on reports he submitted to the Company, the Company knew he was disabled and that it knew unless he received the disability benefits under the policy, he would not be able to make his mortgage payments.

The Commissioner, representing Old Standard, requested another stay of the Illinois action. He noted that although New Standard appeared in the case for the Company based on the reinstated contract claim in count I of Clark's complaint, Clark's recent pleading asking for punitive damages meant that the complaint alleged a tort claim against the Company. According to the rehabilitation plan, any tort claim was the responsibility of Old Standard and had to be made in the Oklahoma proceedings. The Commissioner gave Clark notice of the Oklahoma proceedings and an opportunity to participate in them. According to the Commissioner, a stay of the Illinois proceedings was proper under the Uniform Reciprocal Liquidation Act (Ill. Rev. Stat. 1975, ch. 73, pars. 833.1-833.13), the full faith and credit clause of the United States Constitution and principles of comity. His motion was denied. The Commissioner filed an appeal from this denial.

While the stay was being appealed in Illinois, the Oklahoma court, acting on information from the Commissioner, disallowed Clark's claim for punitive damages against the Company and any other claim he might have had against Old Standard, even though Clark had not filed an appearance or a claim in the liquidation proceeding.

Both Old and New Standard then made motions in the circuit court to dismiss Clark's cause of action. Under section 48(1)(i) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(i)), which permits dismissal of a claim barred by matter defeating its legal effect, they alleged that the contract claim in count I of Clark's complaint was discharged by the February 1975 consent judgment. Under section 48(1)(d) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(d)), which permits dismissal of a claim barred by a prior judgment, they asserted that the Oklahoma court order disallowing Clark's claim against the Company mandated such a dismissal. The circuit court judge granted the motions and dismissed Clark's complaint, ruling that the February 1975 consent judgment settled Clark's contract claim in count I and that since the damage claims in count II for punitive and consequential damages could not stand without a claim for contract damages, count II was also dismissed. Clark appeals this order.

The first issue is whether the judge erred in granting the section 48 motion to dismiss Clark's complaint when he found that the February 1975 consent judgment settled the controversy.

Old and New Standard argue that the section 48(1)(i) motion was properly granted. They contend that the Company did not breach the

consent judgment when it stopped making the payments in October 1975. Under this theory, the insurance policy underlies the consent judgment, even though the insurance policy was not explicitly mentioned in it. According to Old and New Standard, when Clark terminated the mortgage, under the terms of the policy, the policy protection also terminated. Since the settlement depended on the existence of the policy and the Company's obligation depended on the existence of the mortgage, when the Company's obligation terminated under the policy, the obligation under the consent judgment also terminated. Hence, the consent judgment was not violated when payments to Clark were stopped, but is still in effect and it bars Clark's contract claim in count I of his complaint.

Clark's position is that the November 1975 order granting his petition vacating the dismissal and reinstating the original contract claim obviated the legal effect of the February 1975 consent judgment as it operated to settle the contract claim. It, therefore, no longer existed as a bar to the original contract complaint. Clark alleges that the order granting his petition to reinstate his complaint was made under section 72 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) and that the grant of the petition subsumed that the Company violated the consent judgment. Under Supreme Court Rule 304(b)(3) (Ill. Rev. Stat. 1975, ch. 110A, par. 304(b)(3)), any order granting relief under section 72 is immediately appealable. No appeal was taken from the November 1975 order vacating the dismissal and reinstating the complaint. Clark argues that the failure to appeal the order operates to conclusively cancel the effect of the consent judgment as a bar to his contract claim.

■■ We cannot agree with Clark that the Company's failure to appeal the November 1975 order vacating the dismissal and reinstating the complaint precluded the reconsideration of the order and the grounds upon which it was based. According to *Schwartz v. Schwartz* (1966), 69 Ill. App. 2d 128, 135-36, 216 N.E.2d 505, 509:

> "The purpose of * * * section [72] is to permit a judgment or decree to be set aside, vacated or modified under various circumstances where (1) there is an error which is apparent on the face of the record, or (2) there are facts not appearing in the record which, if known to the court at the time judgment was rendered, would have prevented its rendition."

Clark's November 1975 petition to reopen the matter requested none of these; his petition sought enforcement of, not relief from, the consent judgment. (*Schwartz*; see also *Masters v. Estate of Smythe* (1970), 124 Ill. App. 2d 474, 477, 259 N.E.2d 399, 401.) Therefore, section 72 and Supreme Court Rule 304(b)(3) are inapplicable, and no immediate appeal from the November 1975 order reinstating the complaint was necessary.

■■ Before the entry of a final order, "[a] trial judge is not bound by the prior order of another [trial] judge [in the same case.] He has the right to review the prior order if in his judgment it was erroneous * * *." (*Richichi v. City of Chicago* (1964), 49 Ill. App. 2d 320, 325, 199 N.E.2d 652, 655-56.) In the present situation the judge, in granting the section 48 motion, obviously believed that the prior order, finding that the consent judgment had been violated, was erroneous; he was not precluded from reconsidering it.

Although the judge had the discretion to reconsider the effect of the consent judgment, his decision that the settlement barred the contract claim was in error. We believe an examination of the consent judgment shows that the Company's failure to continue payments to Clark violated it.

■ A consent judgment is merely a recitation of the settlement agreement between the parties. (*Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 50, 360 N.E.2d 551, 557.) It is an independent undertaking, which "may supersede both pleadings and evidence and even go to the extent of pointing out and limiting the relief to be granted." (*Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 127, 309 N.E.2d 356, 359.) Like any other agreement, the law of contract controls its interpretation and its meaning should be determined by the language chosen by the parties. *Pierce*, 46 Ill. App. 3d 42, 50, 360 N.E.2d 551, 557; *Filosa*, 18 Ill. App. 3d 123, 127, 309 N.E.2d 356, 359.

■ Here, the settlement agreement, embodied in the consent judgment, premised "certain payments" to Clark upon one condition: the continuance of his disability. Since the record contains no evidence that the disability has ceased and the consent judgment contains no language which indicates that the parties intended payments under it to be conditioned on any other event, the Company breached the settlement when it halted payments to Clark.

■ The Company argues that the terms of the insurance policy were incorporated into the consent judgment. It supports this contention by alleging that a letter it received from Clark dated the same day as the consent judgment requests all payments due him under the policy be sent to his attorney. According to the Company, this means that Clark understood that the policy controlled the settlement payments. But the letter is inconclusive, at best susceptible to a variety of interpretations, and alone is not enough to alter the plain wording of the consent judgment. There was no hearing in the circuit court to determine its relationship to the settlement, if an ambiguity in the settlement existed in the first place, or if the parties intended additional terms to condition the right to payment under the settlement. In such circumstances, we must reject the Company's argument.

Even if the insurance policy controlled the operation of the consent judgment, an analysis of the policy shows that the Company's action in stopping payments to Clark would have violated the policy, and hence the settlement, giving Clark the right to reinstate his original complaint. The satisfaction of the mortgage indebtedness, the event the Company asserts ended its obligation to pay Clark, does not terminate the right to benefits under the policy. According to the termination of protection clause in the policy, satisfaction of the mortgage indebtedness—or the date the principle indebtedness is paid—ends not the right to benefits, but the duration of protection of the policy, *i.e.*, the time throughout which the occurrence of Clark's disability would activate the benefits clause of the contract. The risk being insured against in the contract was the possibility of Clark's disability, not his ability to maintain the mortgage. Assuming that nothing occurred to terminate the policy protection before Clark became disabled, once Clark became disabled, his right to benefits—the right to payments under the policy—was governed by the benefits clause of the policy. Under that clause the right to benefits becomes fixed upon Clark's disability and was to continue so long as the conditions in the benefits clause were met.

■■ Under that clause, if the policy was in effect when Clark became disabled, only the occurrence of one of three events would terminate Clark's right to benefits: the end of his disability, the date of the expiration of the mortgage or his 65th birthday. While Clark's disability is not in question in this appeal and his 65th birthday is readily determinable, there are two possible interpretations of the phrase "the date of expiration of the mortgage agreement." The first would have the date of expiration mean whatever day the mortgage debt ceased existence; the second would define "the date of expiration of the mortgage agreement" as that exact date written on the mortgage contract itself. The first interpretation makes the meaning of "the date of expiration of the mortgage agreement" identical to the meaning of "the date the principle indebtedness is paid." The former phrase is found in the benefits clause of the policy; the latter phrase is found only in the termination of the protection clause. Construction of a contract which makes certain of its terms redundant is not favored. (*Pierce*, 46 Ill. App. 3d 42, 54, 360 N.E.2d 551, 560.) In this case, we believe that if the parties intended to have the right to benefits and the protection of the policy terminate at the same time, they would have used the same language to condition both clauses. They did not and the phrases should not be given interchangeable meanings. Therefore, we must define "the date of expiration of the mortgage agreement" as that certain day, describing the length of the mortgage, set out in the mortgage agreement as the date of its conclusion.

The Company has not alleged that any of the conditions in the

benefits clause which end Clark's right to a monthly payment—the end of the disability, the date of expiration of the mortgage or Clark's 65th birthday—have occurred. Instead, the Company asserts that the payment of the mortgage indebtedness—the condition in the termination of protection clause—acted to stop Clark's right to payments. We cannot accept that reading. Once Clark became entitled to benefits under the policy, only the happening of one of the conditions listed in the benefits clause could end the entitlement. The termination of the protection of the policy does not affect the right to benefits after the right to benefits accrues.

A similar interpretation of the meaning of comparable benefits and protection termination clauses of an insurance policy was rendered in *Olinde Hardware & Supply Co. v. Rogers* (La. App. 1966), 185 So.2d 626. Under the benefits clause of a policy which insured a debtor against the risk of permanent disability, benefits would be paid after a waiting period and upon proof of the disability. Under the policy, the protection would terminate, if among other things, the debt was transferred from the original creditor. In this case, the debtor became disabled and subsequent to his disability the debt was transferred from one creditor to another. The insurance company refused to pay the benefits, asserting that the debtor's right to benefits terminated when the debt was transferred. The court held that "the transfer of the debt to a new creditor is of no consequence as regards to the insured's right to collect under the disability provisions of his certificate of insurance." (*Rogers*, at 634.) According to the court, the debtor had a right to benefits as long as the policy was in force on the date of disability because such right became fixed as of that date.

That holding applies here. Assuming Clark has a right to benefits, his right became fixed on the date he became disabled, and the benefits were to continue until the disability ended, the date of expiration of the mortgage agreement or Clark's 65th birthday. Therefore, when the Company stopped its payments to Clark, it violated the policy.

Old and New Standard contend that Clark, through his attorney, in argument on the motions below, "admitted" that the Company made all proper payments under the insurance policy and the settlement. While in argument in the circuit court, Clark's attorney did acknowledge that payments were made by the Company under the insurance policy and the settlement and that the payments were equal to what Clark owed under the mortgage to the mortgagee. He did not state that the Company did not have an obligation to continue payments under the consent judgment or the policy. The fact that some payments were made does not give the payments the legal effect of an accord and satisfaction of the controversy under the circumstances of this case.

We, therefore, reverse the order of the circuit court which granted the section 48 motion dismissing Clark's contract claim in count I of his complaint.

Next, we must consider whether the circuit court erred in dismissing count II of Clark's complaint. In count II of his complaint, Clark requested compensation for the loss of his home and punitive damages.

■■ Contracts of insurance are to be judged by the same legal principles as any other contract. (See, *e.g., Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910, 364 N.E.2d 337.) In Illinois, when a breach of contract, without more, is alleged, the injured party is to be put in as good a position as he would have been had the contract been fully performed. (*Kalal v. Goldblatt Brothers, Inc.* (1977), 53 Ill. App. 3d 109, 112, 368 N.E.2d 671, 673.) And where, as here, it is claimed that an insurer has refused to comply with the provisions of an insurance policy, the measure of damages is usually limited to the contractual amount. (See 16 Appleman, Insurance Law and Practice §8881, at 634 (1968).) In select cases, consequential damages may be recovered when they "were reasonably foreseeable and were within the contemplation of the parties at the time the contract was executed" (*Kalal*, 53 Ill. App. 3d 109, 113, 368 N.E.2d 671, 674), arising out of special circumstances communicated and known to both parties. See, *e.g., Asher v. Reliance Insurance Co.* (N.D. Cal. 1970), 308 F. Supp. 847; *Mitchell v. Intermountain Casualty Co.* (1961), 69 N.M. 150, 364 P.2d 856; see also 16 Appleman, Insurance Law & Practice §8881, at 303 (1978 Supp.); R. Faletti, *Breach, Repudiation and Damages in Contract Litigation—Legal and Economic Theory*, 1954 U. Ill. L.F. 615, 632-36.

On appeal Clark argues that the loss of the house was a foreseeable damage and therefore recoverable. But none of his pleadings below alleged that the loss of the house or his exclusive reliance on the policy for mortgage payments in case of disability were within the contemplation of the parties—or even foreseeable as a probable result of a breach—at the time the contract was entered into. Count II of Clark's complaint does not presently make a cognizable claim for consequential damages. On remand to the circuit court Clark should be granted leave to amend his complaint, if he so chooses, to include a claim for consequential damages.

In his brief, Clark characterizes his claims in count II for the loss of the house and punitive damages as an action in tort, arising out of the Company's wrongful and malicious conduct in denying him benefits. Legally, he predicates these claims on *Ledingham v. Blue Cross Plan* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75. That case, relying on California law, held that malicious conduct by an insurer in breaching a contract may give rise to an independent wilful tort and the recovery of punitive damages.

Contra, *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373, *appeal denied* (1978), 71 Ill. 2d 602.

■■ However, it is unnecessary for us to consider the propriety of Clark's tort claim. Even if we were to rule that count II of his complaint did state a cause of action in tort for punitive damages, that claim could not be properly heard in Illinois at this time. Under the Oklahoma rehabilitation plan for the Company all tort claims against the Company are the responsibility of Old Standard and have to be asserted in the Oklahoma liquidation proceeding, not in Illinois. According to the Uniform Reciprocal Liquidation Act, of which Illinois and Oklahoma are reciprocal States (see Ill. Ann. Stat., ch. 73, par. 833.1 (Smith-Hurd 1978 Supp.)), when a liquidation proceeding is commenced in a reciprocal State involving an insurer domiciled in the reciprocal State, controverted claims against the insurer by Illinois resident claimants may be made in Illinois if there is a parallel or ancillary liquidation proceeding being conducted in Illinois. If, as in this case, no such ancillary proceeding is pending in Illinois, the claim has to "be proved in the domiciliary state as provided by the law of such state." Ill. Rev. Stat. 1975, ch. 73, par. 833.4.

It was only after the reorganization of the Company into Old and New Standard, with the assignment of tort liability to Old Standard and the acceptance of contractual responsibility by New Standard, that Clark filed his first tort claim against the Company. By that time Old Standard was in liquidation in Oklahoma. Clark was given an opportunity to make a claim in the Oklahoma proceedings. Since at that point Oklahoma, a reciprocal State, provided an adequate forum for the adjudication of tort claims against the Company and promptly acted to make it available to Clark, under the equitable principles articulated in the Uniform Reciprocal Liquidation Act (Ill. Rev. Stat. 1975, ch. 73, par. 833.10) that forum, and not the circuit court, was the appropriate place for a hearing on Clark's tort claim. The dismissal of count II of Clark's complaint as it related to a tort claim for the loss of the house and punitive damages is therefore affirmed.

The final questions before us involve the denial by the circuit court of the Commissioner's motion for a stay of the Illinois action during the pendency of the Oklahoma liquidation proceedings and the effect of the order issued by the Oklahoma court in the proceedings rejecting Clark's claims against Old Standard. Our dismissal of the tort aspects of Clark's damage claims in count II moots these issues.

The order of the circuit court of Cook County dismissing count I of the complaint is therefore reversed and count I of the complaint is reinstated. That part of the order striking count II of the complaint is affirmed and leave should be granted the plaintiff to file an amended

complaint. The cause is remanded for consideration consistent with this opinion.

Reversed in part and remanded.

Affirmed in part.

SIMON, P. J., and McGILLICUDDY, J., concur.