JUSTICE JOHNSON delivered the opinion of the court: Plaintiff, Tyrone C. Fahner, Illinois Attorney General, appeals a decision of the trial court which denied his petition for an order holding defendant, Mark P. Einstein, in contempt. The Attorney General presents the following issues for review: (1) whether the trial court erred in modifying the terms of a preexisting consent decree; (2) whether the court misinterpreted a provision of the Consumer Fraud and Deceptive Business Practices Act; and (3) whether the court erred in denying his petition for a rule to show cause and motion to suspend assurance of voluntary compliance proceedings. We affirm. The present appeal arises from and is a continuation of a prior appeal involving the same parties. In People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association (1982), 108 Ill. App. 3d 266, 438 N.E.2d 1273, this court affirmed the trial court’s finding that defendant Einstein had violated a consent decree and was therefore in contempt of court. We reduced defendant’s fine from $4,500 to $500 because defendant did not knowingly waive his right to a jury trial. 108 Ill. App. 3d 266, 278. On February 2, 1979, a consent decree was entered between the Attorney General and Einstein. The decree alleged that Einstein had solicited property owners of land located in Colorado City, Colorado, who resided in the Chicago area, for the purpose of conducting litigation against the owner and developer of Colorado City. It further alleged that Einstein made certain misrepresentations to the lot owners. Einstein was permanently enjoined from organizing any business entity for the purpose of soliciting litigants for a lawsuit against the developer of Colorado City or any other business entity without entering into an assurance of voluntary compliance with the Attorney General. On September 29, 1981, Beinstein filed a petition for a rule to show cause why the Attorney General and William Shapiro, an assistant Attorney General, should not be held in contempt of court. Einstein alleged that the'1979 consent decree required that he enter into an assurance of voluntary compliance before performing certain activities on behalf of Illinois consumers. He stated that on May 25, 1981, he had requested an assurance for a subdivision known as Palm Coast, Florida. But after meetings and the exchange of correspondence, an assurance had not been executed. Einstein asked that the Attorney General be restrained from refusing to enter into an assurance of voluntary compliance. On October 30, 1981, Einstein’s petition was dismissed because the parties had entered into an assurance of voluntary compliance. In May 1982, Einstein requested an assurance, which would be a carbon copy of the Palm Coast assurance, for Rio communities, a subdivision in New Mexico, and he also requested assurances for other subdivisions. On June 3, 1982, the Attorney General filed a petition for a rule to show cause why Einstein should not be held in contempt of court. The petition alleged that Einstein violated the consent decree by the following acts: (1) Einstein controlled the management of the Colorado City Lot Owners and Taxpayers Association. (2) Einstein proposed a settlement for Colorado City and Cochiti Lake property owners to the defendant in two Federal lawsuits without the knowledge of John Bowlus, attorney for plaintiff property owners. (3) Einstein tried to determine litigation strategy. (4) In various letters Einstein or officers of the lot owners associations criticized Bowlus’ handling of the Federal lawsuit, solicited money for another attorney, and solicited money for Einstein. (5) Einstein caused the lot owners’ association to transfer $25,000 in association funds to him for his legal expenses. On June 3, 1982, the Attorney General also filed a motion to suspend assurance of voluntary compliance proceedings. Plaintiff wanted to suspend negotiations with Einstein because of the latter’s alleged violations of the consent decree. Einstein responded with a motion to strike and dismiss the petition for rule to show cause and a motion to vacate the consent decree. On June 30, 1982, the trial court denied all motions and on its own motion modified the consent decree by deleting sections C and D of article V which provided as follows: “C. That Defendant MARK P. EINSTEIN is permanently enjoined and restrained from organizing, reorganizing, incorporating, or establishing any non-incorporated association, partnership, or any other business entity under any other name or legal structure for the purpose of soliciting litigants or potential litigants for a lawsuit, or as an employee or agent of any of the aforementioned entities, without entering into an ASSURANCE OF VOLUNTARY COMPLIANCE with Consumer Fraud Division of the ILLINOIS ATTORNEY GENERAL’S office. D. That Defendant EINSTEIN is permanently enjoined and restrained from any organizational role in a lot owner’s association as set forth in ‘C’ above, where he might solicit, collect, negotiate, disburse, or deposit funds, on behalf of that aforementioned group or entity, as opposed to his acting as an agent or employee of that entity.” On July 21, 1982, the trial court denied plaintiff’s motion to reconsider and motion for stay. Plaintiff appeals. The first issue raised by plaintiff is whether the trial court erred in modifying the terms of the consent decree. Plaintiff argues that the trial court’s deletion of sections C and D of article V gutted the injunction section of its enforcement threat. The trial court mistakenly concluded that there had been a mutual abandonment of the consent decree, but, according to plaintiff, only Einstein wanted to abandon the agreement. Plaintiff insists that no basis exists in the record for modifying the decree. Plaintiff described the trial court as frustrated with a vehement legal dispute between the parties, as willing to accept Einstein’s outrageous pleading, and as being “disinterested and disinclined” in presiding over a hearing based upon “powder puff” pleadings. Finally, plaintiff contends that the consent decree is conclusive upon the parties as originally executed and should be enforced as written. In his brief, plaintiff concedes that the trial court had jurisdiction and power to modify the consent decree injunction, but argues there was not a sufficient basis in the record to support the action taken by the court. We disagree. At a hearing on June 30, 1982, the trial judge remarked that he had not only reviewed the pleading in the case, he had also reviewed his notes and selective transcripts of proceedings between the parties in the past years. The judge stated that it was not unreasonable for him to assume that at the time the consent decree was executed, both sides were satisfied with it. The trial court then commented as follows: “A consent decree, it should be kept in mind, is not a judgment of any court; it’s an agreement between the parties which is negotiated and executed without court involvement and which is then memorialized in a court-signed decree. It must be kept in mind that a consent decree is the product of the parties and not the product of the court. For reasons that I have never fully appreciated, Judge Cohen, who signed the consent decree, permitted the consent decree to recite continuing jurisdiction in the court to enforce, police, or overview future compliance with the decree. The array of pleadings now before the court and which I have just recited stand for only one proposition. Collectively viewed, they stand for the proposition that both parties seek to repudiate the consent decree’s direction that future Einstein activities in Illinois must be undertaken under terms of an Assurance of Voluntary Compliance. The Attorney General manifests this intent to repudiate the consent decree by taking the position that the consent decree does not impose an affirmative duty on him to enter into an Assurance of Voluntary Compliance with Einstein for each new Illinois venture involving land fraud which Mr. Einstein seeks to become involved in. *** Thus, the Attorney General is saying that an Assurance of Voluntary Compliance will be tendered to Mr. Einstein when, in his unilateral judgment, such is, quote, ‘appropriate,’ end quote, and is, quote, ‘in the public interest, ’ end quote.” The trial judge reiterated remarks he made at a hearing on September 29, 1981, involving a Palm Coast assurance of voluntary compliance. The court commented as follows: “ T am not going to turn this court into a forum for the ongoing dialogue between Mr. Einstein and Mr. Fahner. The consent decree is something that evidently the Attorney General’s office felt had some value. If it has no value, I will be happy to walk away from it. If the Attorney General wants to alleviate himself of the burden of negotiating with this man for an Assurance of Voluntary Compliance, let’s all walk away from the consent decree and allow Mr. Einstein to have the rights of any other citizen in this country.’ Continuing, I say, ‘When the Attorney General can, on his own, develop some facts and proofs and information that relate to Mr. Einstein’s wrongful conduct in Illinois, then let the Attorney General bring an appropriate new case instead of hanging on to this old consent decree.’ ” The trial court then continued as follows: “I cite all of this by way of example that it cannot be lost to the Attorney General nor to anyone that has monitored this case in this courtroom what my views as to the appropriate function of the Assurance of Voluntary Compliance were. From these comments it’s apparent that I do not share the Attorney General’s belief that his office can, by mere exercise of whimsey, decide to grant or deny an Assurance of Voluntary Compliance to Einstein. As for Mr. Einstein, his papers on file also indicate his frustration with the Assurance of Voluntary Compliance procedure imposed under the consent decree. Einstein was once held in contempt by this court for Illinois dealings without an Assurance of Voluntary Compliance. He asks for relief from future AVC requirements because of what he perceives to be the hurdles, delays, and ever-widening demands which the Attorney General seeks to impose on him at each successive AVC request.” The trial court went on to say: “I am unwilling to void the consent decree which Mr. Einstein knowingly and voluntarily entered into. I am unwilling to conduct a hearing on the circumstances of an agreement which neither I nor any member of the Circuit Court had anything to do with. ***. To my view both Mr. Einstein and the Attorney General of Illinois seek to use this court as their official sounding board to unload their real and imagined grievances against one another. Both are anxious to thrust the court into full-scale hearings as to why one is unhappy with the other. Both have yet to present this court with anything that approximates a legitimate and serious justiceable dispute. In the past and on the record I have referred to these ongoing spats as ‘madness’ and as a ‘circus.’ If these characterizations reflect one thing, they reflect my restraint when I speak from the Bench. To say that I am disinterested and disinclined to preside over a hearing on the powder-puff allegations which each side here seeks to establish is to state the fact mildly. The Attorney General has yet to allege a single citizen-initiated complaint against Mr. Einstein in my presence. ***' If those who negotiated for the terms of the consent decree seek to disavow it, there certainly is no reason for the court to strain to keep it viable. Illinois cases are unanimous in their characterization of the consent decree as nothing more than an agreement or a contract between the parties, and Illinois contract law permits mutual abandonment of a prior agreement. The Attorney General’s twice stated position that he cannot be compelled to enter into an AVC with the likes of Einstein is easily accommodated by striking Paragraphs C and D of Article 5 of the February 2, 1979, consent decree. So, also, Mr. Einstein’s desire to repudiate the entire consent decree to get out from under the oppressive and dilatory tactics of the Attorney General in negotiating a new AVC on the undertakings is also easily accommodated by striking Paragraphs C and D of Article 5 of the consent decree. The consent decree, then, so modified, continues to have impact on the parties as to the Colorado City undertakings. While Article 5, Paragraphs C and D, were in full force and effect, the Attorney General and Mr. Einstein executed Assurances of Voluntary Compliance for Einstein’s activities regarding Cochiti Lake, New Mexico; Rotondo, Florida; and Palm Coast, Florida. Those three are in addition to the AVC which covers Colorado City. Those AVCs continue in effect and are not impacted by today’s modification.” A consent judgment is merely a recitation of the settlement agreement between the parties. Like any other agreement, the law of contract controls its interpretation, and its meaning should be determined by the language chosen by the parties. (Clark v. Standard Life & Accident Insurance Co. (1979), 68 Ill. App. 3d 977, 983, 386 N.E.2d 890, 896.) In the instant case, the consent decree provided that the circuit court retain jurisdiction so that the parties might apply “for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Order, for the modification of any of the provisions thereof, for the enforcement of compliance therewith, and for punishment of any violation ***.” Thus, the consent decree by its own terms provided for modification of its provisions. The trial court presided over the proceedings which led to the first appeal between these two parties and was thoroughly familiar with the continuing controversies between them and the law of the case. In our opinion, the trial court did not abuse its discretion in modifying the provisions of the decree. Plaintiff next argues that the trial court misinterpreted section 6.1 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 266.1), which provides as follows: “In the administration of this Act, the Attorney General may accept an Assurance of Voluntary Compliance with respect to any method, act or practice deemed to be violative of the Act from any person who has engaged in, is engaging in, or was about to engage in such method, act or practice. Evidence of a violation of an Assurance of Voluntary Compliance shall be prima facie evidence of a violation of Section 2 in any subsequent proceeding brought by the Attorney General against the alleged violator.” Plaintiff suggests that he is not required to tender an assurance to Einstein when requested. He claims that he did not withhold an assurance from Einstein but only insisted on mutually acceptable terms. As stated above, the law of contract controls the interpretation of a consent judgment. (Clark v. Standard Life & Accident Insurance Co. (1979), 68 Ill. App. 3d 977, 983, 386 N.E.2d 890, 896.) Consideration is a basic element for the existence of a contract. Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract. (Steinberg v. Chicago Medical School (1977), 69 Ill. 2d 320, 330, 371 N.E.2d 634, 639.) In section C of article V of the consent decree, Einstein agreed to be permanently enjoined from certain activities unless he first entered into an assurance of voluntary compliance with the Attorney General. The latter’s implied promise to tender an assurance of voluntary compliance was consideration for Einstein’s promise not to perform certain activities in the absence of an assurance. Therefore, we hold that the trial court properly determined that the Attorney General was required under the consent decree to tender an assurance to Einstein upon the latter’s request. Finally, plaintiff argues that the trial court erred in denying the petition for rule to show cause and motion to suspend assurance of voluntary compliance proceedings. Sections A, B and E of article V of the consent decree provide as follows: “A. That Defendant MARK R EINSTEIN is permanently enjoined and restrained from acting directly or indirectly, or through his agents, attorney or attorneys, from controlling the management, affairs and conduct of the Colorado City Lot Owners and Tax Payers Association. B. That Defendant MARK P. EINSTEIN is permanently enjoined and restrained from organizing, reorganizing, incorporating, or establishing any non-incorporated association, partnership, or any other business entity under any other name or legal structure for the purpose of soliciting litigants or potential litigants for a lawsuit against Great Western Cities Colorado City Development. * * * E. That Defendant MARK P. EINSTEIN is permanently enjoined and restrained from taking any action of any nature whatsoever relating to any Colorado City Lot Owners and Tax Payers Association funds, including depositing additional funds or withdrawing or transferring same.” Plaintiff alleged that Einstein violated these provisions of the consent decree by (1) attempting to and in fact controlling the management, affairs and conduct of the Colorado City Lot Owners and Taxpayers Association; (2) soliciting funds from lot owner associations in which he has an organizational role; and (3) causing the Colorado City Lot Owners and Taxpayers Association, as well as the Cochiti Lake Sublessees Association, to withdraw and/or transfer $25,000 in association funds in order to pay Einstein’s personal legal expenses. Plaintiff submitted numerous exhibits in support of his motion including an affidavit of John Bowlus, attorney for a lot owners association, and letters mailed by Einstein to lot owners. According to plaintiff, the trial court should not have denied the petition for a rule unless it clearly appeared that no set of facts could be proved under the pleading which would warrant the relief requested. Plaintiff contends that the trial court erred in denying the petition, particularly without hearing argument, because the petition set forth violations of the consent decree which warranted an additional contempt finding. We reject plaintiff’s contentions. At the hearing to reconsider on July 21,1982, the trial court stated as follows: “As a citizen, Einstein has the right to free speech and free assembly, and those rights are restricted only by the consent decree. To my view the purpose of the consent decree was to secure for the citizens of Illinois control over Mr. Einstein’s conduct and effective tools to audit his Illinois presentations. The consent decree does not give rise to a right in the Attorney General to exercise prior restraint on Einstein’s First Amendment rights. If Mark Einstein’s Illinois conduct is abusive, it must be abusive in the meeting halls and in the organizational meetings where he seeks to solicit support from unwary Illinois citizens. It’s not sufficient that the abuse that’s brought here be merely an abuse which is conjured up in the minds of the Illinois Attorney General or his staff. That’s what I have continually resisted. If Mark Einstein’s performance in his organizational efforts can be documented as being opposed to the best interests of the citizens of Illinois, then that should be easily documented and readily brought to the Court. The plethora of consent decree contempt proceedings that have been initiated are replete with an assortment of allegations against Mr. Einstein’s conduct; but until this morning, I’ve never been tendered nor have I ever heard of or read a citizen-oriented, a citizen-offered complaint. That’s the point that I’ve tried to make throughout. * * * The dispute between the members of the association and their new attorneys or their old attorneys is of no concern whatsoever to this Court or to anyone else until the members of that association rise up and complain that the conduct of Mr. Einstein is detrimental to their interests as Illinois citizens. To my view, that then would rise to a level of a matter that should be brought to the Court as a consent decree matter. Nothing like that has ever happened here, that’s why I continually view the Attorney General’s efforts here as a misapplication of his appropriate role under the consent decree. ***. * * * The reason I didn’t allow oral argument the last time we were together was because I had a wide assortment of motions that morning on this particular case, all of which were many pages long, all of which I believed fully aired and fully ventilated the competing positions of the parties, all of which I read. And I came to the bench that morning fully cognizant of the range of disputes that the competing parties were determined to place before me. Underlying all of that was my belief held then and my belief held now that the Attorney General and I viewed the consent decree from essentially different positions and that this ongoing dialogue between the Court and the Attorney General was serving neither his office nor this Court any good purpose and that it was best to move on to take a step that I thought was called for on the basis of the proceedings that had been ongoing here since the first contempt proceeding and find out what does the consent decree mean.” In our opinion, the trial judge did not abuse his discretion in not allowing oral argument on the petition for a rule to show cause because, as he himself stated, he had read all the pleadings which “fully ventilated the competing positions of the parties.” Further, we hold that the trial judge did not err in denying the petition for a rule to show cause. He reviewed the pleadings and exhibits and determined that the allegations in the petition did not establish a violation of the consent decree. We cannot say that this determination is against the manifest weight of the evidence. For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed. Affirmed. LINN and JIGANTI, JJ., concur.