CITIZENS UTILITIES COMPANY OF ILLINOIS, Plaintiff-Appellee and Counterappellant, v. CENTEX-WINSTON CORPORATION *et al.*, Defendants-Appellants and Counterappellees (Shell Oil Company, Intervening Defendant-Appellant and Counterappellee).

Third District   No. 3—88—0413

Opinion filed April 7, 1989.—Rehearing denied August 16, 1989.

Stuart D. Gordon and George A. Marchetti, both of Moss & Bloomberg, Ltd., of Bolingbrook (Barry L. Moss, of counsel), for appellant Village of Bolingbrook.

Thomas R. Wilson, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, and Marlaine McVisk and John M. Touhy, both of Mayer, Brown & Platt, of Chicago (Lee N. Abrams, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

At issue in this appeal is the validity and enforceability of a consent decree entered into in 1971 by the Village of Bolingbrook (Village) and Citizens Utilities Company of Illinois (Citizens). In the court below, Citizens sought a permanent injunction prohibiting the Village from violating the consent decree. Specifically, Citizens sought (1) an order enjoining the Village from supplying water service to Shell Oil Company (Shell) in an area where the consent decree prohibited the Village from providing water and sewer services and (2) an order enjoining the Village from otherwise attempting to provide water or sewer services in the prohibited territory.

The relevant portion of the consent decree entered into in 1971 provides, with a few exceptions not relevant here, that Citizens is generally prohibited from providing water and sewer service east of State Route 53 and the Village is generally prohibited from providing such service west of State Route 53.

In 1978, the Village purchased the Oak Tree Sewer and Water Supply Company (Oak Tree). Oak Tree had previously been certified by the Illinois Commerce Commission (ICC) to provide water and sewer services to all of section 7 and a portion of section 18 of Du Page Township, an area located west of State Route 53 and at the time of purchase serving but four customers. The only positive step made by Citizens in objecting to the purchase of Oak Tree by the Village was an October 26, 1976, letter to the Village indicating that the consent decree "prohibits Village water or sanitary sewer service in the Oak Tree area." The Village nonetheless went forward with the purchase, but development in the Oak Tree area apparently did not take place as rapidly as the Village anticipated, resulting in an annual deficit in its operation of roughly $100,000 per year. The Oak Tree service area did expand, however, and at the date of hearing in the trial court serviced 140 customers, about one-third the number needed to make the system viable.

In 1981, Citizens learned that the Village was considering supplying water and sewer services to Hinsdale Hospital, located west of Route 53. Citizens promptly notified the Village that the action would violate the consent decree. As a result, an agreement was entered into between the Village and Hinsdale Hospital wherein the Village provided funding for construction of water facilities for the hospital without acquiring any interest in those facilities or providing any water or sewer services to the hospital. Citizens apparently had no participation in securing water and sewer facilities to the hospital, although it was located west of Route 53.

In August 1986, Shell Oil Company contacted Citizens about obtaining water and sewer services for a gas station and car wash to be built in an area west of Route 53. Citizens indicated it would provide such services but, according to a Shell representative, because the nearest water main owned by Citizens was located 2,000 to 3,000 feet away, it was not financially feasible to incur the cost of a water main extension and Citizens would provide no financial assistance. Citizens maintains that Shell then informed Citizens that Shell planned to drill its own well and use a septic system for sewage.

Around the same time period, Shell also applied to the County of Will for a rezoning of the property. The Village objected on the grounds of increased traffic at the intersection, the location of curb cuts at the intersection and the difficulty in fighting a fire if the property was serviced with water from a private well. Following negotiations between the Village and Shell, the Village agreed to absorb 50% of the cost of extending the Oak Tree water main to the Shell parcel and Shell agreed to become annexed to the Village sometime after 1991. A copy of the engineering plans for extending the Oak Tree water main was sent to Citizens in July of 1987. Citizens, however, voiced no objection to the agreement between Shell and the Village until actual construction of the water main was set to begin in February of 1988, well after the contracts were executed and land purchased by Shell.

The Village, in open court, expressed its intention to provide both water and sanitary sewer service, insofar as the same is both economically and physically feasible, to all properties west of Route 53 unless it is restrained from doing so. Citizens, however, has also made plans to serve the area west of Route 53 and has made expenditures of funds in constructing facilities to provide that area with both water and sewer services.

On February 26, 1988, Citizens sought and received a temporary restraining order prohibiting any further construction on the water main from Oak Tree to Shell until further hearing. Subsequent hearings were had, and on June 1, 1988, the trial court denied Citizens' motion for permanent injunction to restrain the Village from completing the installation of the water main to the Shell site and further denied Citizens' motion relating to all areas west of Route 53 previously certified to be served by Oak Tree. The court also found that the consent decree was validly entered into between the parties and, except as mentioned above, remained in full force and effect. The Village submits that the territorial boundary of utility service areas contained in the consent decree are unenforceable by Citizens for various reasons. Citizens basically takes the opposite position.

■ Consent decrees, which are utilized to effectuate settlement, are considered contracts between parties to litigation, and accordingly, the law of contracts controls their interpretation. (*Clark v. Standard Life & Accident Insurance Co.* (1979), 68 Ill. App. 3d 977, 386 N.E.2d 890.) The parties chose the language of the document, not the court.

■ It cannot be disputed that the Village violated the consent decree when it purchased the Oak Tree System and now again by contracting with Shell for water service. The question is whether Citizens' nonaction amounted to a waiver of its right to object to such encroachments and, if so, to what extent have its rights been waived. Waiver is the " 'intentional relinquishment of a known right.' " (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 193, 492 N.E. 2d 1284, 1287, quoting *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 499, 475 N.E.2d 872, and *Vermilion County Production Credit Association v. Izzard* (1969), 111 Ill. App. 2d 190, 195, 249 N.E.2d 352.) "It may be express or implied, and arise from acts, words or conduct of the one waiving the right." (*Sexton*, 112 Ill. 2d at 194.) The trial court's evidentiary finding of whether Citizens has waived any rights will not be disturbed unless that decision is contrary to the manifest weight of the evidence. (*Sexton*, 112 Ill. 2d at 194.) Nonetheless, the legal effect of waiver is an issue of law and thus not subject to the manifest weight standard.

■ In this case, it is clear that Citizens made no express waiver of its right to prohibit the Village from providing services west of Route 53. At the time the Village purchased Oak Tree, Citizens took no court action to prohibit the purchase. It did apparently send a letter to the Village referencing the Village's violation of the consent decree but did nothing more. At the time Oak Tree was purchased, it serviced only four customers but has since expanded, without objection by Citizens, and now services roughly 148 customers. The Village has not expanded the Oak Tree facility beyond the area it was certified to serve. Similarly, Citizens took no positive prohibitive action to prevent Shell from acquiring water service from the Village until all of the preparations had been made. We agree with the trial court that Citizens has therefore waived any right to enforce the consent decree as to these areas. We disagree, however, with the trial court's determination that the paragraph of the consent decree regarding same remains in full force and effect excepting the Oak Tree and Shell areas therefrom.

In *Watts v. Fritz* (1963), 29 Ill. 2d 517, the supreme court of Illinois construed certain provisions of a restrictive covenant imposed upon property allegedly prohibiting property owners from subdividing existing lots and from erecting more than one principal building. The court

determined that if in fact the covenant created such restrictions, plaintiff waived any right to invoke the provisions because he had acquiesced in prior subdividing of lots and building of additional homes on those lots. Further, that merely talking to the developer of the original subdivision and possibly an attorney about the defendant's intentions was not positive preventive action. (*Watts*, 29 Ill. 2d 517.) Regarding the extent of the waiver, the court stated:

> "Minor violations of a restriction will not prohibit the subsequent enforcement of it. (*Henricks v. Bowles*, 20 Ill. App. 2d 148.) However, where there has been acquiescence in prior violations of the very substance of a general plan or particular restriction, the plaintiff will be held to have waived any right he may have had to enforce it. Thus, in *Wallace v. Hoffman*, 336 Ill. App. 545, at 554, the court said: 'The law is well settled that even where a general plan is shown the restrictions under the plan will not be enforced where violations have been acquiesced in.' To the same effect are *McGovern v. Brown*, 317 Ill. 73 and *Curtis v. Rubin*, 244 Ill. 88. It appears to us that even if the restrictions here were construed to prohibit the subdividing and the building thereon, yet plaintiff has so acquiesced in prior violations as to be unable to enforce any such restriction." *Watts*, 29 Ill. 2d at 523-24.

In accord with *Watts* is *Saverslak v. Davis-Cleaver Produce Co.* (7th Cir. 1979), 606 F.2d 208, wherein plaintiff sued defendant for damages resulting from, among other things, defendant's failure to include plaintiff's trademark on the label of turkey rolls sold by defendant as required by paragraph 22 of a patent-licensing agreement entered into between the parties. The trademark was eliminated from the label in 1963, but plaintiff, despite full knowledge of the breach and ample opportunity to protest, did not seek to enforce paragraph 22 of the agreement until 1970. Thus, defendant argued that plaintiff waived any right to enforce paragraph 22. Regarding the waiver issue, the court noted that "waiver occurs when an obligor manifests an intent not to require an obligee to strictly comply with a contractual duty." (*Saverslak*, 606 F.2d at 213.) Therefore, plaintiff's failure to assert his right for seven years caused the court to conclude that plaintiff did not retain an underlying contractual right upon which to base a claim for damages. *Saverslak*, 606 F.2d 208.

In this case, we get the impression that the area west of Route 53 is on the eve of substantial growth, creating a demand for water and sewer services. However, when the consent decree was entered into, there were very few users of such services in the same area. Moreover,

when Oak Tree was established and certified to serve an area west of Route 53, the apparently expected growth of the area never materialized and the Village, without significant objection by Citizens, took over Oak Tree and has operated the facility at a loss ever since, although the number of customers serviced by Oak Tree is expanding to a point near viability. Also true is that Hinsdale Hospital was built west of Route 53 and eventually had water services supplied from its own water facility constructed with financial assistance from the Village. There is mention that the Village was at first going to connect the hospital to the Village system but this proposal drew objection from Citizens. Also significant is that Citizens acknowledged that it has constructed expensive physical facilities so that it can provide service when significant development occurs there. We interpret this to mean that until such time as significant development occurs, Citizens was not providing services and the few customers in need of such service had to look elsewhere and they did. Thus, when Oak Tree was in financial distress, the Village stepped in and provided services at a loss. Since a substantial term of the consent decree precluded the Village from providing services in this area, Citizens should have taken positive action to protect its rights regardless of whether there was no gain to be had by the Village. This was not a minor violation by the Village in that it went to the very substance of the consent decree, and Citizens' acquiescence in this prior violation precludes it from enforcing that provision of the consent decree. Citizens simply cannot, in a piecemeal fashion, determine which violations will be objected to and which ones will not without some type of writing modifying the consent decree. The "substance of the agreement" rationale of *Watts* and the "length of time" rationale of *Saverslak* are both applicable to this case. Citizens has waived any rights it had to prohibit the Village from providing water and sewer services west of Route 53, and the trial court's order dated June 1, 1988, regarding this issue is reversed accordingly.

We do, however, affirm the trial court's decision in all other respects concerning the validity of the consent decree, and except as noted above, the consent decree remains in full force and effect.

Finally, Citizens filed a motion to strike certain parts of the Village's brief as proffering new arguments not raised at the trial level. The motion is denied.

Reversed in part and affirmed in part.

BARRY and STOUDER, JJ., concur.