**SCHNEIDER NATIONAL CARRIERS, INC., Plaintiff–Appellee,**

v.

**David M. CARR, Defendant–Appellant.**

**No. 89–1679.**

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1990.

Decided June 8, 1990.

---

John T. Mulvihill, South Bend, Ind., for plaintiff-appellee.

David T. Stutsman, Elkhart, Ind., for defendant-appellant.

Before CUMMINGS, POSNER and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

David M. Carr was driving a truck south on Indiana Route 15 in the course of his employment for Troyer's Poultry, Inc., in the early morning hours of April 8, 1987. At the same time, Ronald Gillette was driving a truck west on Indiana Route 6 for Schneider National Carriers. Route 6 and Route 15 intersect in Elkhart County, Indiana; Carr's truck entered that intersection when Gillette's truck was already there. Both trucks were destroyed, and Carr sustained a serious head injury. According to Carr, Gillette ran a red light at the intersection; Gillette says it was Carr who was in the wrong. Schneider National Carriers sued Carr and Troyer's in the district court for the Northern District of Indiana, and Carr counterclaimed against Schneider for his injuries.

The case was assigned to Judge Allen Sharp. A pretrial conference was held and a trial date set for February 27, 1989. On June 30, 1988, one day before the discovery cutoff date and seven months after Schneider's suit was instituted, Carr filed a similar suit in the Indiana state courts. In the state court suit, as in the federal, the principal issue was which of the drivers ran the red light. The only difference between the suits was that Carr had named the State of Indiana and Consolidated Rail Corporation as additional defendants; the state for not properly placing and maintaining the stoplight, and Conrail for having a railroad-crossing warning sign which could interfere with a driver's ability to see the stoplight at the intersection. In light of the new state suit, Carr filed a "Memorandum of Law on Compulsory Counterclaim," which was in effect a request that the federal action be stayed pending the outcome of the state suit. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). After studying a memorandum in opposition, the district court refused to stay proceedings. Trial was to be held according to schedule on February 27, 1989.

On January 19, 1989, Carr moved for a continuance of the trial date. The reason stated was that Carr intended to enter a medical treatment program operated by New Medico, Inc. in Battle Creek, Michigan, to deal with psychological and behavioral problems which resulted from the injuries suffered in the accident. He stated that he would not be available for trial on February 27, and that until the treatment program was completed he would be unable to prove the extent of his damages. He added that under Indiana's Workers' Compensation Law he was required to accept the treatment. Schneider responded that Carr had not yet been admitted to New Medico, and that there was therefore no impediment to trial. Schneider noted that Carr could easily schedule his admission to New Medico for some time after the trial and suggested that Carr was merely trying to delay the trial. The district judge denied the motion for continuance.

Carr filed a second motion for continuance on February 7, less than three weeks before the scheduled trial date. This motion stated that Carr was shortly being admitted to New Medico, that his doctors recommended entering the program as soon as possible, and that the program was scheduled to begin on February 11. Attached to the motion were letters from Carr's doctors and a copy of New Medico's proposed treatment plan for him. The motion was followed on February 21 by Carr's memorandum of law in support of a continuance. The court denied the motion the same day without comment.

The case did in fact go to trial before a jury on February 27, 1989. Carr did not personally appear, and Carr's attorney did not put Carr's deposition testimony into evidence. The jury heard conflicting testimony about who ran the red light and specifically found that Carr was the person solely responsible for the accident. A judgment of $42,785.65 plus prejudgment interest of $6,518.25 was entered against Carr and Troyer's, and Carr took nothing on his counterclaim. Carr appeals from the adverse judgment. He argues that the federal suit should have been stayed in favor of the state court action, and that it was an abuse of Judge Sharp's discretion to deny the motions for continuance.

### STAY UNDER THE COLORADO RIVER DOCTRINE

In a small class of cases, federal courts should stay the exercise of their "virtually unflagging obligation" to decide all cases within their jurisdiction to await the outcome of parallel proceedings in the state courts as a matter of "wise judicial administration." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. In determining whether to stay a federal action, the district court should first determine whether the state and federal actions are indeed parallel. *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir. 1988). If they are, the court should carefully balance the advantages and disadvantages of granting a stay, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). We review the district court's decision for abuse of discretion. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978).

▇▇▇ Judge Sharp ruled that the federal suit and the state suit were indeed parallel. We agree. As we said in *Interstate Material Corp.*, 847 F.2d at 1288, the issue is not whether the state and the federal suit are identical, but only if they are parallel. Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora. The existence of additional parties in one suit does not of itself destroy parallelism. We noted in *Interstate Material Corp.* that the *Colorado River* doctrine is sufficiently important that it cannot be avoided simply by the stroke of a pen. Just so, the duty of the federal courts to decide cases within their jurisdiction is too weighty to be avoided by the stroke of a litigant's pen. As between Carr and Schneider National Carriers, there is no difference whatever between the federal suit and the later state court action. The only issue is who ran the red light. The issue raised in the state action regarding defendant Conrail was eventually disposed of by summary judgment in Conrail's favor.* The theory that the State of Indiana was at fault for failing to provide a stoplight that Gillette could easily see was so weak that it was only proper for the district court to disregard it. Besides, Carr could get complete relief from Gillette's employer in the federal ac-

---

* The fact that the subsequent grant of summary judgment for Conrail was not before the district court at the time of its order denying the stay does not bar us from considering it. Because the purpose of the *Colorado River* doctrine is to conserve judicial resources, we look at the total situation as of the time of the appeal. *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691,

697 n. 4 (7th Cir.1985). Conrail has also filed a motion that Carr be required to pay Conrail's legal fees on the ground that the claim against it was frivolous. That motion is still pending. The State of Indiana's motion for summary judgment was denied, and the case is proceeding in the state court against it and against Schneider and Gillette.

tion if he had won, without respect to the possible liability of the State. *See* Ind. Code § 34–4–33–3 (amount of judgment is total damages from all sources reduced in proportion to plaintiff's degree of fault so long as plaintiff's fault is 50% or less). The issue of overriding importance in both suits was which of the two drivers ran the red light. The district judge's decision that the suits covered substantially the same issues between substantially the same parties was proper.

It was within the district judge's discretion to rule that the relevant factors did not tip strongly in favor of staying the federal case pending the outcome of the state suit. A decision in the later state suit would have been entitled to res judicata effect in the federal suit, and therefore a stay would ultimately have been tantamount to a dismissal. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 9–10, 103 S.Ct. at 933–34. "Only the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247. The Supreme Court and this Court have enumerated several factors that may be relevant in determining whether a stay is appropriate. *See, e.g., Lumen Constr. Inc. v. Brant Constr. Co.*, 780 F.2d 691 (7th Cir.1985). Both Courts have often stated that no one factor is determinative. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–47; *Medema v. Medema Builders*, 854 F.2d 210, 213 (7th Cir.1988). The weight to be given any one factor is determined solely by the circumstances of the particular case—there is no mechanical formula by which to determine when a stay is appropriate. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 16, 103 S.Ct. at 937.

The district judge relied on the fact that the state action was not commenced until the federal suit was well underway. A pretrial conference had already been held and a trial date and discovery cut-off date set. The state action was not filed until seven months after the federal suit was commenced. This was an appropriate factor to consider, and it does weigh heavily against staying the federal suit. The principal purpose of a stay under *Colorado River* is judicial economy, and judicial econ-

omy is not promoted by throwing away seven months' work.

Carr's argument that Indiana and Conrail were not present in federal court makes little difference. The district court did not enjoin Carr from pursuing those parties in the state action. As between Schneider and Carr, the federal suit was well advanced. The fact that a federal decision might collaterally estop Carr's presentation of certain issues in state court does not amount to unfairness; he had the opportunity for a full hearing on the merits of such issues in federal court, and one fair adjudication is enough.

Carr's other arguments are equally unavailing. He argues that the state forum was more convenient for all concerned because the case was to be decided under Indiana's new comparative fault statute, Ind.Code § 34–4–33–1 *et seq.* (effective date January 1, 1985). According to Carr, there are difficult and unsettled issues as to the application of the new statute which would be better handled by the state courts. But federal courts determine difficult questions of state law every day. And in the unlikely event that there is a state law issue of great importance that the federal courts are unable to decide, there is a procedure by which this Court can certify a question to the Indiana Supreme Court. But more important, the federal jury found Carr to be one-hundred percent at fault for the collision. No questions of interpretation of the comparative fault statute ever arose, and Carr has presented no question which needs to be decided in light of the jury's verdict. Because we consider *Colorado River* questions *ex post* rather than *ex ante, Lumen Constr.*, 780 F.2d at 697 n. 4, we may consider the outcome of the trial to conclude that no difficult and unsettled questions of state law arose which would justify a stay which would operate as a dismissal of the federal suit for all practical purposes.

At bottom, Carr's argument for a *Colorado River* stay is founded on the proposition that this is a diversity suit in which at least two proceedings will be necessary to adjudicate all claims. That is not enough

**1158**

to tip a balance heavily weighted in favor of the exercise of federal jurisdiction. As stated in *Evans Transportation Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir.1982),

> It is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy—in having two active lawsuits instead of one. That will always be possible when there is a parallel state suit pending.... But until Congress decides to alter or eliminate the diversity jurisdiction we are not free to treat the diversity litigant as a second-class litigant, and we would be doing just that if we allowed a weaker showing of judicial economy to justify abstention in a diversity case than in a federal-question case.

Judge Sharp's decision to go forward with the case before him was within his discretion.

## CONTINUANCE

■ The district court's refusal to continue the trial to a later date on account of Carr's pending admission to New Medico was a scheduling decision, and as such is reviewable only for abuse of discretion. *Northern Indiana Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 269 (7th Cir.1986). Carr's principal argument is that it was an abuse of discretion to proceed with trial at a time when Carr was becoming unavailable due to illness. We do not agree that Carr's illness required an indefinite delay in the trial. Carr was no sicker on the day he finally entered New Medico than he was at the time the trial date was originally set. Carr's wife testified at trial that his doctors had advised him to enter New Medico "early on," but that he had refused to consider it. There was no sudden change of medical circumstances that required him to rush into treatment. *See Carbon County Coal*, 799 F.2d at 269 (failure to grant continuance is reversible error only where changed circumstances make the existing schedule unreasonable). Further, Carr has done nothing to show that the doctors at New Medico would have forbidden him to attend the trial during the day and return to the facility in the evening. He simply has not shown that he made any effort whatever to attend the trial.

Carr further states that he was required under state law to accept treatment or lose Workers' Compensation benefits. But Workers' Compensation paid New Medico's bills even though Carr had resisted entering the program for almost two years. Under Indiana law, Workers' Compensation benefits are cut off only if the employee's refusal to accept treatment is unreasonable. *Childers v. Central Teaming & Constr. Co.*, 179 Ind.App. 186, 188, 384 N.E.2d 1116, 1117–18 (1979). It would not have been unreasonable for Carr to request a short delay in commencement of the program to allow him to attend trial. It appears from the record that Carr and New Medico agreed on an admission date; Carr could easily have requested a later admission to meet his preexisting obligation to go to trial, and there is no indication that the Workers' Compensation authorities would have objected.

Carr last argues that it was abuse of discretion to proceed to trial in his absence because he could have offered important testimony. He does not explain why his counsel failed to introduce the transcript of his deposition into evidence, or why deposition testimony would not have been adequate, but that hardly matters. Judge Sharp knew that Carr had testified in his deposition that he had no memory of events surrounding the accident, and this forgetfulness was confirmed at trial by testimony from Carr's psychologist, Dr. Gary Elliott. Therefore Carr could not have offered any additional evidence on the issue of who was at fault for the collision. The jury found Carr to be one-hundred percent at fault. The only issues as to which Carr could have testified, questions about the extent of his damages, became moot upon that decision. Even if the question of damages had not fallen out of the case, Carr argues in this Court that he did not yet know the full extent of his injuries because he had not completed the New Medico program. This unpreparedness was Carr's own fault. He knew at the time the trial schedule was

set that he did not yet know the full extent of his injuries, and that he carried the burden of proof on that issue. Not only could he have requested a later trial at that time, but once the trial was scheduled he should have taken immediate steps to gather the necessary information. He apparently did nothing about it until he entered New Medico sixteen days before trial.

It would not be sensible to remand this case for a new trial when exactly the same evidence would be presented on the decisive issue of liability. Carr himself had nothing to offer the jury on that issue, and he does not point out any errors in the liability phase of the trial he has already had. One fair adjudication is enough.

AFFIRMED.