**PROPERTY & CASUALTY
INSURANCE LIMITED,**
Plaintiff–Appellant,

v.

**CENTRAL NATIONAL INSURANCE
COMPANY OF OMAHA** and **William
H. McCartney, Director of Insurance of
the State of Nebraska, as Rehabilitator
for Central National Insurance Company of Omaha, Defendants–Appellees.**

No. 90–1801.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1991.

Decided July 8, 1991.

Thomas W. Conklin, Linda E. Unger, Diane Karp, Conklin & Roadhouse, Chicago, Ill., for plaintiff-appellant.

Alan J. Martin, Thomas A. Gauza, Michael J. Gill, Nancy K. Linnerooth, Mayer, Brown & Platt, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Property & Casualty Insurance, Ltd. ("PCIL"), appeals from the dismissal without prejudice of its complaint and raises the issue of whether the district court acted properly in abstaining under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Unable to discern whether *Burford* applies under these facts, we find it necessary to remand this case for further consideration by the district court.

## I.

On May 2, 1989, PCIL filed this diversity action against Central National Insurance Company of Omaha ("Central National").

The three-count complaint sounded in contract; PCIL sought amounts allegedly owed under a reinsurance agreement and damages arising out of the failure to pay those amounts.[1] Significant amounts of discovery produced no factual issues and the dispute boiled down to what both PCIL and Central National characterize as a straightforward question of contract interpretation involving one sentence of a reinsurance certificate.[2] The parties filed cross-motions for summary judgment and were in the middle of the briefing schedule when an outside force intervened.

While PCIL and Central National had been litigating in Illinois, Nebraska's director of insurance had placed Central National under supervision. When that measure was not deemed sufficient, the director sought to place the company into rehabilitation. A Nebraska state court was petitioned and on March 9, 1990, that court appointed the director of insurance as the rehabilitator ("Rehabilitator") of the troubled insurer. One portion of the rehabilitation order, mimicking the language of Nebraska's insurance rehabilitation statute, NEB.REV.STAT. § 44–4815(1), instructed the Rehabilitator to consider immediately all litigation involving Central National that was pending outside of the state and to "petition the courts having jurisdiction over that litigation for stays whenever necessary to protect the estate of Central National."

With the state court order in hand, and nothing else, the Rehabilitator petitioned the district court to either stay or dismiss this action. The district court, delivering its opinion from the bench, concluded that the principles announced in *Burford* required abstention.

## II.

Jurisdiction, if properly conferred, sought by PCIL. PCIL tried to capitalize on this apparent admission of liability by asking the district court to enter an immediate judgment in its favor as to this admitted liability. The district court denied this "supplementary motion for summary judgment," concluding that PCIL could not split a single claim.

1. Transco Insurance Service ("Transco"), Central National's managing general agent, was also listed as a defendant. The district court granted Transco's motion to dismiss and PCIL does not appeal that decision.

2. In fact, Central National's motion took the position that Central National owed a sum that was approximately two-fifths of the judgment

is meant to be exercised.[3]  As the Supreme Court reiterated in *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 2512, 105 L.Ed.2d 298 (1989) [hereinafter *"NOPSI"*], "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *NOPSI* also reminds us of "the undisputed constitutional principle that Congress, and not the judiciary, defines the scope of federal jurisdiction within the constitutionally permissible grounds." *Id.* 109 S.Ct. at 2513 (citing *Kline v. Burke Constr. Co.,* 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226 (1922)).

Those principles being stated, federal courts do maintain some discretion in determining whether to grant certain types of relief.  This discretion, "a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted," includes the ability to abstain. *Id.* (citing Shapiro, *Jurisdiction and Discretion,* 60 N.Y.U. L.Rev. 543, 570–77 (1985)); *see also Burford,* 319 U.S. at 317–18, 63 S.Ct. at 1098–99.  Our discretion is carefully defined, however; abstention remains " 'the exception, not the rule.' " *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (quoting *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)).

In reviewing the district court's decision to abstain, the underlying legal questions are subject to de novo review. *University of Md. v. Peat Marwick Main & Co.,* 923 F.2d 265, 269–70 (3d Cir.1991). The decision itself is reviewed for abuse of discretion. *A.G. Edwards & Sons, Inc. v. Public Bldg. Comm'n,* 921 F.2d 118, 121 (7th Cir.1990); *see also Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 665, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978).  There is little or no discretion, however, to abstain in a case that does not meet traditional abstention requirements, and that determination is a question of law.  *See, e.g., Schneider Nat'l Carriers, Inc. v. Carr,* 903 F.2d 1154, 1156 (7th Cir.1990) (before using *Colorado River* balancing test, court must first find parallel state and federal actions); *see also University of Md.,* 923 F.2d at 269–70.

Here, we concentrate on the rationale for abstention announced by the Supreme Court in *Burford,* 319 U.S. 315, 63 S.Ct. 1098.  In large part because its analysis provides the closest fit, *Burford* has become the doctrine of choice in analyzing whether to abstain in favor of state insurance liquidation and rehabilitation proceedings.  *See General Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 708 (7th Cir.1991) (collecting cases).  We cannot forget the teachings of the other abstention cases (the dividing lines between various types of abstention are by no means impermeable), but the fit is not as good.[4]  As such, our analy-

---

**3.** The appellees do raise one argument that might affect our jurisdiction.  Specifically, they cite Ill.Rev.Stat. ch. 73, para. 833.4, which states: "If a delinquency proceeding is commenced in a reciprocal state against an insurer domiciliary in such state, claimants against such insurer who reside within this state may file claims either with the ancillary receiver, if any, appointed in this state or with the domiciliary receiver." An Illinois court has interpreted this provision to require dismissal of claims by Illinois creditors when those claims are not filed with either an ancillary or domiciliary receiver. *Clark v. Standard Life & Acci. Ins. Co.,* 68 Ill. App.3d 977, 987, 386 N.E.2d 890, 899, 25 Ill.Dec. 416, 425 (1st Dist.1979).  And on the basis of paragraph 833.4 and *Clark,* two district courts have dismissed diversity actions on the premise that an Illinois state court would have dismissed the action. *See Sears, Roebuck & Co. v. Northumberland Gen. Ins. Co.,* 617 F.Supp. 88, 89

(N.D.Ill.1985); *Dantes v. Empire Mut. Ins. Co.,* No. 79 C 649 (N.D.Ill. Sept. 27, 1979).

These dismissals, however, do not appear to rest on jurisdictional grounds.  Rather, the undercurrents of comity found in *Clark* suggest that dismissals involving paragraph 833.4 are based on prudential concerns. 68 Ill.App.3d at 987, 386 N.E.2d at 899, 25 Ill.Dec. at 425 (dismissing under "equitable principles"); *see also Twin City Bank v. Mutual Fire Marine & Inland Ins. Co.,* 646 F.Supp. 1139, 1141–42 (S.D.N.Y. 1986), *aff'd without opinion,* 812 F.2d 713 (2d Cir.1987).  And as such, *Sears* and *Dantes* are better viewed as examples of abstention and the issues raised by the Illinois statute are already incorporated into and are better analyzed by reference to abstention doctrine.

**4.** For example, the record discloses no pending litigation in the Nebraska courts involving the question presented by PCIL's claim, and the

sis generally follows *Burford* but will borrow from other abstention analyses when appropriate.

In *Burford*, the Texas legislature had created a complex administrative mechanism for addressing issues concerning local oil well drilling. All direct review of orders arising out of that mechanism was concentrated in a designated state court, which permitted that court, like the underlying administrative body, "to acquire a specialized knowledge" of the administrative regulations and the oil industry. *Id.*, 319 U.S. at 327, 63 S.Ct. at 1104. That concentration was also justified under the theory that the dispersal of review among various state courts " 'would lead to intolerable confusion. If all [state courts] had jurisdiction of such matters, different courts of equal dignity might reach different and conflicting conclusions as to the same rule.' " *Id.* (quoting *Alpha Petroleum Co. v. Terrell*, 122 Tex. 257, 273, 59 S.W.2d 364, 372 (1933)).

It was under this Texas scheme that Burford received an administrative order permitting four oil wells to be drilled. Sun Oil protested that order, not in the designated state court but in federal district court, on the ground that it violated the fourteenth amendment's promise of due process. And the Supreme Court, in determining that abstention was appropriate, found that judicial review in the designated state court was "expeditious and adequate," *id.*, 319 U.S. at 334, 63 S.Ct. at 1107, whereas review in the comparatively unsophisticated federal courts had caused "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy." *Id.* at 327, 63 S.Ct. at 1104. Moreover, review by federal courts would give rise to the "intolerable confusion" that the Texas scheme sought to avoid by confining review to a designated court. *See id.* at 327, 333–34, 63 S.Ct. at 1104, 1107.

■■■ Subsequent cases, including those from our own circuit, describe *Burford* abstention as appropriate when either of its dual concerns is present. Thus, "we should abstain from deciding difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the present case." *Hartford Cas. Ins. Co. v. Borg–Warner Corp.*, 913 F.2d 419, 425 (7th Cir.1990) (citing *NOPSI*, 109 S.Ct. at 2514). We should also abstain "from the exercise of federal review that would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* (citing *NOPSI*, 109 S.Ct. at 2514). Only the second type of *Burford* abstention concerns us here.[5]

In addition to serving as a restatement of the principles of *Burford*, *Hartford Casualty* serves as a springboard for our application of *Burford* to the present situation. In *Hartford Casualty*, an Illinois court placed a captive insurance company into rehabilitation and also issued an order enjoining all actions against the insurance company, its directors, officers, or stockholders (except, of course, those claims that were filed in a specialized proceeding the purpose of which was to marshal assets and liabilities and determine how much the creditors would receive). *Id.* at 421. Hartford at that time filed a claim in the centralized proceeding to recover various reinsurance obligations owed by the captive. When the rehabilitation court later modified its injunction to allow outside actions against the captive's directors, officers, or stockholders, Hartford took advantage of

---

absence of duplicative state litigation appears to remove this case from the range of cases to which *Colorado River* has traditionally been applied. *See Colorado River*, 424 U.S. at 817–21, 96 S.Ct. at 1246–48; *Schneider Nat'l Carriers*, 903 F.2d at 1156; *see also Stamp v. Insurance Co. of N. Am.*, 908 F.2d 1375, 1379 (7th Cir. 1990).

**5.** The first of the *Burford* abstention rationales simply does not apply. Central National and

the Rehabilitator seek abstention in favor of Nebraska courts, but the parties have taken the position that Illinois law governs the reinsurance agreements in question; it makes no sense to abstain so that a Nebraska court can decide questions of *Illinois* law. Abstaining in favor of Illinois state courts would also seem inappropriate; the underlying issues require only basic principles of contract interpretation and do not implicate the concerns that the Supreme Court relied upon in *Burford*.

that modification and filed an action in federal court against the captive's parent and the parent's other subsidiaries for their role in the captive's demise. *Id.*

Guided by principles of ripeness and standing as well as abstention, we affirmed the district court's decision to abstain. *Id.* at 424. Illinois, we noted, had a paramount interest in developing a uniform insurance rehabilitation process. *Id.* at 426 (citing *Blackhawk Htg. & Plumbing Co. v. Geeslin*, 530 F.2d 154, 159–60 (7th Cir.1976)). And because the liability, if any, of the federal court defendants hinged upon a determination of the liability, if any, of the captive insurer, the federal court determination would require the parties to litigate the same issues that were being litigated in the specialized claims proceeding. *Id.* This overlap, with its accompanying possibility that Hartford could jump ahead of creditors litigating in the specialized claims proceeding, threatened the policy of uniformity espoused by the state of Illinois and therefore justified abstention.

■ An examination of cases like *Burford* and *Hartford Casualty* establishes two essential elements of *Burford* abstention. First, and most obvious, the state must offer some forum in which claims may be litigated (here, a creditor claims proceeding). Second, that forum must be special—it must stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims.[6] The ability to point to a specialized proceeding is a prerequisite of, not a factor in, the second type of *Burford* abstention. *See Board of Educ. v. Bosworth*, 713 F.2d

1316, 1320 (7th Cir.1983); *Evans v. City of Chicago*, 689 F.2d 1286, 1295–96 (7th Cir. 1982); *see also Educational Servs., Inc. v. Maryland State Bd. for Higher Educ.*, 710 F.2d 170, 173–74 (4th Cir.1983); *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 376–77 (9th Cir.1982).

■ And therein lies the rub. It is quite apparent from the record that Central National is experiencing some form of financial difficulty. We cannot ascertain with reasonable certainty, however, whether the Rehabilitator has commenced the type of proceeding to which *Burford* and *Hartford Casualty* paid deference.[7] The Nebraska rehabilitation statute says nothing about the wisdom or necessity of a specialized creditor claims proceeding; its institution is within the complete discretion of the Rehabilitator. What is more, we have no indication that the Rehabilitator has attempted to commence a specialized proceeding. Last, the large body of courts before which review is presently possible does not stand in any special relationship of technical oversight or concentrated review to the evaluation of creditor claims against Central National. And under these circumstances, abstention does not appear to be appropriate.

We begin with the Nebraska statute. Nebraska has created a complex administrative scheme, in partnership with its courts, to assist troubled insurers through the medium of state receivership. *See* NEB. REV.STAT. §§ 44–4801 to –4861. The statute provides for three basic forms of receivership, the least intrusive of which is "supervision," wherein the director of insurance, on his or her own accord, decides

6. Recall that the state of Texas in *Burford* and the state of Illinois in *Hartford Casualty* sought to limit review by *all* nonspecialized courts, including those nonspecialized courts within their borders.

7. Central National and the Rehabilitator accuse PCIL of waiving this issue, but the record does not support their waiver theory. The initial request for a stay or dismissal relied solely upon ILL.REV.STAT. ch. 73, para. 833.4, *see supra* note 3. The parties did cite abstention cases, but they only tangentially raised the issue of abstention.

It is the district court, not the parties, that deserves the bulk of the credit for raising the abstention doctrine. After briefing, the parties

appeared before the district court. There was no oral argument. The district court delivered its opinion from the bench but did not rely on the Illinois statute that the parties had briefed. Instead, the district court concluded that abstention was appropriate. When the district court finished, PCIL raised an objection concerning the lack of a Nebraska proceeding.

The district court did not abuse its discretion by raising the abstention doctrine sua sponte, but the consequence of that action is quite clear. This appeal is the first time that the parties have had the opportunity to brief the relevant issues. And for this reason, if for no other, waiver seems inappropriate.

to oversee the insurer. *See id.* § 44–4809. At the other end of the spectrum is "liquidation," in which the director of insurance petitions a court for the purpose of taking control of the insurer and commencing a centralized claims proceeding (the mechanics of which the statute sets forth at exhaustive length) that in both purpose and appearance resembles a bankruptcy proceeding. *See id.* §§ 44–4816 to –4859.[8]

In between these two extremes is "rehabilitation," which encompasses those cases that require a response more serious than supervision but are not yet significant enough to require liquidation. *See* Neb. Rev.Stat. §§ 44–4801 to –4816. And to solve this vast array of potential problems, the Rehabilitator is given an immense amount of discretion and flexibility. Indeed, the Rehabilitator may take whatever action he or she "deems necessary or appropriate to reform and revitalize the insurer." *Id.* § 44–4814(2).

To list a few examples, the rehabilitation of Insurer A may involve nothing more than a change in management. *See id.* § 44–4814(2). The rehabilitation of Insurer B may involve nothing more than a merger with another insurer to take advantage of needed economies of scale. *See id.* § 44–4814(4).[9] The rehabilitation of Insurer C may involve, by itself or in combination with some other response, a specialized claims proceeding (such as the one in *Hartford Casualty*) for the purpose of centrally and uniformly resolving the claims of Central National's creditors. All of these actions are classified as "rehabilitation proceedings," yet not all of them involve a specialized proceeding; only the rehabilitation of Insurer C implicates *Burford*.

Central National and the Rehabilitator have pointed to only one portion of the statute that, on this record, might provide some basis for *Burford* abstention. That passage states:

> Any court in this state before which any action or proceeding in which the insurer is a party or is obligated to defend a party is pending when a rehabilitation order against the insurer is entered shall stay the action or proceeding for ninety days and such additional time as is necessary for the rehabilitator to obtain proper representation and prepare for further proceedings. The rehabilitator shall take such action respecting the pending litigation as he or she deems necessary in the interests of justice and for the protection of creditors, policyholders, and the public. The rehabilitator shall immediately consider all litigation pending outside this state and shall petition the courts having jurisdiction over that litigation for stays whenever necessary to protect the estate of the insurer.

Neb.Rev.Stat. § 44–4815(1).[10] The defendants interpret this subsection as requiring abstention or dismissal in all non-Nebraska proceedings, but we are not ready to accept that argument.

When referring to Nebraska proceedings, section 44–4815(1) notes that a "stay" is appropriate to allow the Rehabilitator time to obtain proper representation and

---

**8.** Insolvent insurance companies cannot be the subject of federal bankruptcy proceedings. 11 U.S.C. § 109.

**9.** Of course, the Rehabilitator could likely receive a temporary stay in this type of situation, but this is not a case where the Rehabilitator requested a temporary stay in order to familiarize himself with the proceedings, as well as the general state of affairs of Central National, and then plan a strategy. Instead, the Rehabilitator requested the district court to abstain and require PCIL to litigate in a forum the nature and mechanics of which are far from clear.

**10.** The relevant portion of the order of rehabilitation tracks this language and states:

> 10. Any court in this state before which any action or proceeding in which Central National is a party or is obligated to defend a party is pending at the time this Order of Rehabilitation is entered, shall stay the action or proceeding for 90 days and such additional time as is necessary for the rehabilitator to obtain proper representation and prepare for further proceedings. The rehabilitator shall take such action respecting the pending litigation as he deems necessary in the interest of justice and for the protection of the creditors, policyholders, and the public. The rehabilitator shall immediately consider all litigation pending outside this state and shall petition the courts having jurisdiction over that litigation for stays whenever necessary to protect the estate of Central National.

prepare for further proceedings. When, two sentences later, the same subsection refers to a "stay" within the context of non-Nebraska proceedings, it would appear logical that the word should have the same meaning as it did before, i.e., that the Rehabilitator may petition non-Nebraska courts for a "stay" in order to obtain proper representation and prepare for further proceedings. This is particularly true when section 44–4805(1)(f) confers upon the Rehabilitator the power to petition the rehabilitation court for an injunction against PCIL's action. It is fanciful, in our view, to interpret the word "stay" as having two different meanings within the same paragraph.[11]

Even if we indulged the defendants' argument that section 44–4815(1) indicates a legislative desire for abstention or dismissal in all non-Nebraska proceedings, that section still fails to limit creditor litigation to a specialized proceeding within Nebraska. Indeed, section 44–4815(1) would allow suits anywhere within the Nebraska state court system (wherein only temporary stays are required). And the nature of that "proceeding," in which creditors are not limited to any one Nebraska court, is clearly distinguishable from the one in *Hartford Casualty*, wherein review was concentrated in a single forum.

We do not dispute the Rehabilitator's ability to commence a specialized claims proceeding. Indeed, the use of a rehabilitation statute to accomplish what is in essence a liquidation is not unique. *See, e.g., Hartford Casualty*, 913 F.2d at 421; *Grode v. Mutual Fire, Marine & Inland Ins. Co.*, 132 Pa.Commw. 196, 572 A.2d 798 (1990). Our reading of the Nebraska rehabilitation statute, however, leads us to the conclusion that it does not create a specialized proceeding of its own accord; to the contrary, the decision is within the complete discretion of the Rehabilitator. The Rehabilitator must thus make an affirmative effort to commence a specialized proceeding, and reasonably clear evidence of such effort does not appear in this record.

In response to PCIL's claim that no specialized proceeding exists, the appellees have essentially admitted the truth of that argument. The record, moreover, contains no plan of rehabilitation and the Rehabilitator has openly expressed uncertainty as to how Central National's rehabilitation will progress. Nor has the Rehabilitator sought an injunction from the Nebraska court that issued the order of rehabilitation, this despite the fact that the statute expressly permits that court to issue an injunction against the "institution or further prosecution of any actions or proceedings." NEB.REV.STAT. § 44–4805(1)(f); *see also id.* § 44–4803(18).[12] Nor do we even have any reasonably solid indication that the Rehabilitator has requested stays or dismissals in other litigation.

This record stands in marked contrast to the record in *Lac D'Amiante du Quebec v. American Home Assur. Co.*, 864 F.2d 1033 (3d Cir.1988), where a liquidation statute specifically required a specialized proceeding and left few secrets as to its nature and form. It also stands in marked contrast to the record in *Hartford Casualty*, where this court was apprised of the existence of a specialized proceeding by means of a continually modified plan of rehabilitation and a state court injunction against all pending actions. 913 F.2d at 421; ILL.REV. STAT. ch. 73, para. 801. Indeed, it even stands in marked contrast to *Clark*, 68

---

**11.** Additionally, while the Nebraska statute is fairly new and has yet to be interpreted by the Nebraska courts, we would note that the language is not unique to that state. It is based on a prototype drafted by the National Association of Insurance Commissioners, a prototype that in turn drew heavily from a 1967 Wisconsin statute. Section 645.34(1) of that Wisconsin statute, from which section 44–4815(1) was drawn virtually verbatim, is accompanied by an informative committee comment: "The rehabilitator should not be permitted to escape actions and proceedings instituted against the insurer—

if he needs to do that the insurer should be liquidated, not rehabilitated—but he should be given time to reconsider strategy." WIS.STAT. § 645.34 committee comment.

**12.** We are puzzled by this apparent attempt to make an end run around the Nebraska statute, but a state court injunction is only a helpful, not a necessary, predicate of *Burford* abstention. *See generally Burford*, 319 U.S. 315, 63 S.Ct. 1098.

Ill.App.3d at 987, 386 N.E.2d at 899, 25 Ill.Dec. at 425, which applied "equitable principles articulated in the Uniform Reciprocal Liquidation Act" to dismiss Clark's tort claims because "Oklahoma, a reciprocal state, provided an adequate forum for the adjudication of tort claims against the Company and promptly acted to make it available to Clark." *Hartford Casualty*, moreover, which was brought to our attention by the Rehabilitator, would allow this court to take into account events that occurred after the district court decision. 913 F.2d at 421 n. 1. In briefs and at oral argument, however, the Rehabilitator was either unwilling or unable to add some focus to the somewhat blurry picture presented by the record.

Nor is the gap in this record immaterial; it stymies a proper review of whether the district court abused its discretion in abstaining. For example, it is somewhat difficult to say that PCIL is attempting to jump ahead of creditors in a Nebraska claims proceeding when we are uncertain as to whether a Nebraska claims proceeding exists. Indeed, the central relationship of a specialized proceeding to *Burford* abstention leaves this court uncertain as to whether the district court even had discretion to abstain under these facts.

Accordingly, we believe that it is appropriate to remand this case to the district court. The Rehabilitator may, indeed, be gathering Central National's creditors in one proceeding so as to litigate their claims with some measure of uniformity, but on this record we cannot ascertain the existence of that proceeding with reasonable certainty. We realize that the Rehabilitator is applying a relatively new statute, and that some leeway might therefore be appropriate, but abstention in favor of pure speculation cannot be what *Burford* had in mind.

■ On remand, the district court should determine, using any reasonable format, whether Nebraska has commenced the type of specialized proceeding to which *Burford* paid deference. The burden lies with the proponents of abstention, here Central National and the Rehabilitator. They may use any reasonable means to meet that burden, examples of which have been set forth in this opinion. The purpose of this inquiry, moreover, is not to determine the adequacy of any specialized proceeding, only its existence.[13]

### III.

If abstention is truly the exception and not the rule, then a proceeding of unknown nature, if it exists at all, cannot provide the basis by which to retreat from an obligation to exercise jurisdiction over PCIL's claim. In view of the very narrow but significant question raised by PCIL's appeal, we believe that the district court's decision must be VACATED and this cause REMANDED to Judge Shadur for further proceedings not inconsistent with this opin-

---

13. We take no position on whether abstention would be appropriate if, indeed, there exists a specialized proceeding in Nebraska. We do, however, raise one further point that should be addressed on remand. As has been stated time and time again, *Burford* abstention requires a very careful and fact-specific inquiry. *See, e.g., General Ry.*, 921 F.2d at 708–09; *Lac D'Amiante*, 864 F.2d at 1047 (abstention to state insurance liquidation proceedings is not "per se rule," court must consider facts of individual case); *see also NOPSI*, 109 S.Ct. at 2514 ("While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy.") (quoting *Colorado River*, 424 U.S. at 815–16, 96 S.Ct. at

1245). On the present record, it is unclear whether the district court gave adequate attention to the individual facts of this suit. The progress made in this litigation, for example, points less toward abstention than did the facts in *Lac D'Amiante*, where "[t]he completion of the district court's work was still a year away and entailed additional discovery, hearings and briefing." *Lac D'Amiante*, 864 F.2d at 1047. Here, the parties were in the middle of a briefing schedule on cross-motions for summary judgment and Central National had admitted to at least partial liability; the facts appear closer to those of *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822 (8th Cir.1990), in which the Eighth Circuit refused to abstain when the defendant was placed in rehabilitation after the parties had filed briefs on appeal and were awaiting oral argument.

ion.[14]

The parties shall bear their own costs.

ESCHBACH, Senior Circuit Judge, dissenting.

I respectfully dissent because I regard Judge Wood's excellent opinion in *Hartford Cas. Ins. Co. v. Borg–Warner Corp.*, 913 F.2d 419 (7th Cir.1990) as controlling in the present case. Also, I believe that the declaratory nature of any judgment that the District Court might reach and the requirements of Illinois law support the District Court's decision to abstain.

The only difference between the present case and *Hartford Casualty* is that in the latter case the rehabilitator had begun a "specialized proceeding" to resolve claims —"therein lies the rub" according to the majority. Majority Opinion at 323. But this point cannot be dispositive. Although a state proceeding existed in *Hartford*, "Hartford's claims c[ould] not be brought in [that] state proceeding." 913 F.2d at 425. What's more, the state court in *Hartford* had specifically authorized suits such as the one at issue to proceed. 913 F.2d at 421, 426. By contrast, in the present case, the majority reverses an abstention order even though the claims at issue are amenable to suit in state court, and a state court order has specifically authorized the rehabilitator to "petition the courts having jurisdiction over ... [all pending] litigation for stays whenever necessary to protect the estate of Central National." Order for Rehabilitation, March 9, 1990, ¶ 10. This litigation posture makes the present case even more appropriate for abstention than was *Hartford*.

Further, I differ from the majority because of its failure to explain the consequences of "rehabilitation". Under the re-

habilitation order, the Nebraska Director of Insurance is "directed to forthwith take possession and control of the assets of Central National ... [and] the books, accounts, bank accounts, documents, and other records of Central National and of the premises occupied by it." Order for Rehabilitation, March 9, 1990, ¶ 3. The Director of Insurance has received "all the powers of the directors, officers, and managers of Central National, whose authority shall be suspended." *Id.*, ¶ 5. In short, "rehabilitation" means that the Nebraska Director of Insurance has complete control of Central National.

As the majority acknowledges, "[w]e should ... abstain 'from the exercise of federal review that would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" Majority Opinion at 322, *quoting Hartford*, 913 F.2d at 425. An order to the Director of Insurance, telling him to pay a specific dollar amount to PCIL out of Central National's limited assets, would be a bald usurpation of the Director's duties, and nothing in the majority opinion supports such an order. The District Court was thus right to "view what's potentially involved here as declaratory in nature." Transcript of Proceedings of March 29, 1990, p. 8; *see Lac D'Amiante v. American Home Assurance*, 864 F.2d 1033, 1042 (3rd Cir.1988) (construing a district court's judgment against an insolvent insurer as merely declaratory and reversing for failure to abstain). That is, PCIL will not be able to execute any judgment the District Court might reach until the Nebraska courts or the Nebraska Director of Insurance say that it can.[1] Perhaps the Nebraska authorities will pay PCIL a fractional value of the face amount of any judgment based on the ratio of

**14.** PCIL also argues that we should reverse the district court's denial of the "supplementary motion for summary judgment." When confronted with the possibility that this issue was not properly before this court, PCIL refused to respond with legal arguments. Instead, PCIL contents itself with invoking this court's broad equitable powers; we do not have to decide this issue, PCIL argues, but we could. And in view of this manner of presentation, we deem it sufficient to state only that no useful purpose would be served in ruling on a nonfinal decision that will

likely be mooted by a determination on the more comprehensive cross-motions for summary judgment. We therefore decline PCIL's invitation to comment on the district court's denial.

**1.** In its brief to this Court (at p. 24), Central National argued that "PCIL's claim will not be paid, in any event, before a plan of rehabilitation is approved" in Nebraska state court, a point which PCIL has not challenged.

Central National's assets to its liabilities, or perhaps PCIL will be in a class of creditors that receives no compensation. Either way, the utility of the District Court's judgment is dubious. It is hard to see an abuse of discretion in the District Court's refusal to issue a judgment that it cannot enforce. *See, e.g., A.G. Edwards & Sons, Inc. v. Public Building Commission,* 921 F.2d 118, 120 (7th Cir.1990) (stating that district courts have "wide discretion" to abstain from issuing a declaratory judgment and are "under no compulsion to exercise th[eir] jurisdiction" in such cases).[2]

Finally, the majority essentially ignores its own statement that Illinois law controls this case. *See* Majority Opinion at 322 n. 5. Under Ill.Rev.Stat., ch. 73, ¶ 833.4, Illinois courts would require that this suit be brought against Central National in Nebraska, because of Central National's rehabilitation status and the "reciprocal" nature of Nebraska's and Illinois' insurance codes. *See Clark v. Standard Life & Accident Ins.,* 68 Ill.App.3d 977, 987, 25 Ill. Dec. 416, 425, 386 N.E.2d 890, 899 (1st Dist.1979) (such a claim *"has to* 'be proved in the [insurer's] domiciliary state as provided by the law of such state' ") (emphasis added). The majority cannot avoid this rule merely by labelling it "prudential." *See* Majority Opinion at p. 321 n. 3. Whatever considerations may motivate Illinois' law, that law governs this case.

In short, the majority fails to follow *Hartford;* fails to respond to the District Court's accurate conclusion that any judgment would be essentially declaratory; and fails to apply Illinois' clear rule of law. For these reasons, I dissent.

---

**2.** It might be appropriate in some cases for a federal court to issue a judgment that it cannot immediately enforce, if only because evidence does not last forever. But the possible loss of evidence is not a significant concern in the present case. PCIL urges that the dispute is a simple matter of contract interpretation that is appropriate for summary judgment. *See, e.g.,* Opening Brief of Plaintiff-Appellant, p. 23. Nothing prevents the pending summary judg-

ment motions from being renewed at any later time or from being filed in a new state court suit at relatively little cost.

Also, the majority acknowledges that the Nebraska rehabilitation statute at issue follows a model act and is similar to that in other states. *See* Majority Opinion at 325 n. 11. This point indicates that the Nebraska procedure is not likely to be of such "unknown nature" as the majority's opinion suggests. *Id.,* at 326.